IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| DEMETRIUS N. PITTS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 22-cv-54-NJR |
| | ) | |
| | ) | |
| DAN SPROUL, J. LECLAIR, C. DAVIS, | ) | |
| KATHY HILL, N. SIMPKINS, | ) | |
| HARMON, BARBARA VON | ) | |
| BLANCKENSEE, AMBER NELSON, B. | ) | |
| PATTIOS, MARY NOLAND, S. | ) | |
| WALLACE, KATHERINE SIEREVELD, | ) | |
| and TRACY KNUTSON, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Demetrius N. Pitts, an inmate of the Federal Bureau of Prisons ("BOP")

who is currently incarcerated at United States Penitentiary–Marion ("USP–Marion"),

originally filed this action in the Circuit Court of the First Judicial Circuit, Williams

County, Illinois (Doc. 1, p. 1). He seeks damages and injunctive relief for the denial of an

Islamic prayer schedule and religious materials. He alleges violations under the First

Amendment, invoking *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). He also

raises claims under Illinois law for civil conspiracy, negligence, and intentional inflection

of emotional distress. He also invokes the Religious Freedom Restoration Act ("RFRA"),

42 U.S.C. 2000bb, *et seq*.

1

## The Complaint

In his Complaint, Pitts makes the following allegations:  Pitts is a Sunni Muslim who, as of May 28, 2021, is housed in USP-Marion's Communications Management Unit Special Housing Unit ("CMU SHU") (Doc. 1-1, p. 5). As a result, he does not have access to his personal property. Pitts is a Sunni Muslim and is required to perform five prayers per day, at minimum, at set times during the day (*Id*.). When he was placed in the CMU SHU, his personal watch was taken from him (*Id*. at p. 6). He asked a correctional officer if he could keep his watch to tell time for his prayers, but he was told that no property was allowed in the CMU SHU (*Id*.). He later asked several correctional officers for various religious materials including his Holy Quran, prayer rug, and alarm clock from his personal property so that he could practice his religion. Again, he was told that he was not allowed his property in the CMU SHU per the Captain's rules (*Id*.).

Pitts specifically asked Hill, Simpkins, Wallace, and the new CMU manager for a prayer schedule from the chapel area so that he could know the time to pray, but his request was denied (*Id*.). He also tried to obtain a schedule from Wallace, Harmon, Sproul, Leclair, and Davis but was denied. He also asked these officials for his watch or digital radio; those requests were also denied. He was told he could not have these items for security reasons. Because he lacks access to religious materials and a prayer schedule, or even a way to tell time so that he can pray as required by his religion, the practice of his religion has been burdened.

Pitts raises the following counts in his Complaint:

| Count 1: | First Amendment free exercise claim for money damages against Davis, Sproul, Leclair, Harmon, Hill, Wallace, and Simpkins in their individual capacities for denying Pitts access to a prayer schedule and religious materials. |
|---|---|
| Count 2: | First Amendment free exercise claim for injunctive relief against Davis, Sproul, Leclair, Harmon, Hill, Wallace, and Simpkins in their official capacities for denying Pitts access to a prayer schedule and religious materials. |
| Count 3: | Religious Freedom Restoration Act ("RFRA") claim against Defendants for money damages for denying Pitts access to a prayer schedule and religious materials. |
| Count 4: | Religious Freedom Restoration Act ("RFRA") claim against Defendants for injunctive relief for denying Pitts access to a prayer schedule and religious materials. |
| Count 5: | Illinois civil conspiracy claim against Defendants for reaching an agreement to violate Pitts's rights by denying him access to a prayer schedule and religious materials. |
| Count 6: | Illinois negligence claim against Defendants for refusing to provide Pitts with a prayer schedule and religious materials. |
| Count 7: | Illinois intentional infliction of emotional distress claim against Defendants for refusing to provide Pitts with a prayer schedule and religious materials. |

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[1]

---

[1] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

## Removal and Substitution of the United States

On January 12, 2022, Defendants removed the case to this Court pursuant to the Westfall Act, 28 U.S.C. § 2679, and alternatively under the federal officer removal statute, 28 U.S.C. § 1442(a)(1). (Doc. 1). Pitts raised no objection to the removal.

For actions commenced in state court, as here, the Westfall Act calls for removal to the federal district court "embracing the place in which the action or proceeding is pending," which, in this case, is Williamson County, Illinois. *See Osborn v. Haley*, 549 U.S. 225, 230 (2007) (citing 28 U.S.C. § 2679(d)(2)). The Act amended the Federal Tort Claims ACT ("FTCA"), 28 U.S.C. §§ 1346, 2671-80, to require substitution of the United States as a defendant in a tort suit brought against a government employee. *Osborn*, 549 U.S. at 230. The Westfall Act grants federal employees absolute immunity from *tort* claims arising out of acts undertaken in the course and scope of a federal employee's employment. *Id.* at 230 (citing 28 U.S.C. § 2679(b)(1)). It empowers the Attorney General to certify that a federal employee sued for wrongful or negligent conduct "was acting within the scope of his office or employment at the time of the incident out of which the claim arose," and renders the Attorney General's certification "conclusiv[e] … for purposes of removal." *Id.* (citing 28 U.S.C. §§ 2679(d)(2)).

In this case, Pitts brings three tort claims governed by the FTCA: civil conspiracy (Count 5), negligence (Count 6), and intentional infliction of emotional distress (Count 7). Defendants have certified their employment with the BOP during the relevant time period (Doc. 1-2). The claims are also properly removed to this district. Thus, the United

States shall be **SUBSTITUTED** in place of the individual defendants in Counts 5, 6, and 7.

Defendants also seek removal under the federal officer removal statute, 28 U.S.C. § 1442(a)(1). Section 1442(a)(1) applies to officers of the United States who are sued in their official or individual capacity for acts under color of such office. The underlying case was also properly removed under the federal officer removal statute as the claims stem from allegations of misconduct by the federal official defendants while they were acting under the color of their office or in the performance of their duties.

<u>Merits Review</u>

This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

**A. Preliminary Dismissals**

In addition to identifying Davis, Sproul, Leclair, Harmon, Hill, and Simpkins as individuals whom he specifically spoke to about his religious materials and who denied him access to his materials and prayer schedule, Pitts also identifies Blankensee, Noland, Nelson, Pattios, Siereveld, and Knutson as additional defendants who are liable for "approving of, condoning, and endorsing these policies" (Doc. 1-1, p. 6). He also alleges that they were aware as supervisors and were on notice because other inmates

5

complained about their lack of personal religious items. But there is no indication that they were personally involved in the denial of Pitts's religious materials. Thus, Pitts fails to state a claim against Blankensee, Noland, Nelson, Pattios, Siereveld, and Knutson, and they are **DISMISSED without prejudice**.

### B. *Bivens* Claims

Counts 1 and 2 are brought pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), against all Defendants in both their individual and official capacities for both monetary damages (Count 1) and injunctive relief (Count 2). The Supreme Court in *Bivens* acknowledged that "victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right." *Carlson v. Green*, 446 U.S. 14, 18 (1980) (citing *Bivens*, 403 U.S. 388 (1971)). The Court has explicitly recognized this implied damages remedy in only three contexts, however, including a claim for an unlawful search and seizure in violation of the Fourth Amendment in *Bivens*, 403 U.S. 388 (1971); a claim for gender discrimination in violation of the Fifth Amendment in *Davis v. Passman*, 442 U.S. 228 (1979); and a claim for the denial of medical care in violation of the Eighth Amendment in *Carlson v. Green*, 446 U.S. 14 (1980). In the four decades that have since passed, the Supreme Court has not recognized a *Bivens* remedy in any other context.

Moreover, the Supreme Court has cautioned lower courts against expanding this remedy into new contexts absent special circumstances. *Ziglar v. Abbasi*, –– U.S. ––, 137 S.Ct. 1843 (2017). To determine whether a *Bivens* remedy is available to Pitts for his claims against Defendants, the Court must ask whether the claim presents a new *Bivens* context.

*Id.* at 1859. If so, the Court also must consider whether any special factors counsel hesitation in granting an extension of this remedy into the next context. *Id.*; *Hernandez v. Mesa*, 140 S.Ct. 735 (2020).

Counts 1 and 2 both involve a claim of interference with Pitts's religious exercise caused by the denial of a prayer schedule and access to his religious materials. The Supreme Court has not recognized a *Bivens* remedy for First Amendment claims. *See Wood v. Moss*, 572 U.S. 744, 757 (2014) (noting that the Supreme Court has not recognized an implied damages remedy under the First Amendment); *Reichle v. Howards*, 566 U.S. 658, n.4 (2012) ("We have never held that *Bivens* extends to First Amendment claims."). In addition, Pitts's claim for interference with his religious exercise is unlike the three claims previously recognized by the Supreme Court in *Bivens*, *Davis*, and *Carlson*. Pitts's claim presents a new *Bivens* context.

Thus, the Court must consider whether any special factors counsel against inferring a *Bivens* damages remedy here. This inquiry focuses on "whether the Judiciary is well-suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Abbasi*, 137 S.Ct. at 1857-58. It involves consideration of alternative remedies that are available to Pitts. The existence of other remedies "alone may limit the power of the Judiciary to infer a new *Bivens* cause of action." *Id.* The *Abbasi* Court emphasized that "when alternative methods of relief are available, a *Bivens* remedy usually is not." *Abbasi*, 137 S.Ct. at 1863 (citations omitted).

Pitts asserts claims against the individual defendants under the First Amendment and RFRA. The question is whether RFRA provides an alternative method of relief here.

According to the Supreme Court and the Seventh Circuit Court of Appeals, the rights conferred by RFRA are more expansive than the free exercise rights protected by the First Amendment. *See Holt v. Hobbs*, 574 U.S. 352, 357 (2015); *Korte v. Sebelius*, 528 F. App'x 583, 588 (7th Cir. 2012) (noting that "RFRA protects the same religious liberty protected by the First Amendment, and it does so under a more rigorous standard of judicial scrutiny."). Moreover, RFRA offers monetary and injunctive relief. *Tanzin v. Tanvir*, 141 S.Ct. 486 (2020). The scope of protections and availability of relief under RFRA are factors that counsel hesitation in expanding the *Bivens* remedy into the First Amendment religious context.

Further, as to Pitts's claim for injunctive relief in Count 2, the Court notes several problems with this claim. First *Bivens* provides an implied *damages* remedy against a federal agent in his or her *individual* capacity. *Bivens*, 403 U.S. 388 (1971). Pitts's Complaint also seeks *injunctive* relief against federal officials in an *official* capacity. (Doc. 1-1, p. 6). Second, Count 1 does not survive screening under Section 1915A, so this related request for relief under *Bivens* also fails. Third, Pitts has an alternative avenue to relief under RFRA and, indeed, has sought injunctive relief in Count 4.

Because Pitts has a basis for relief under RFRA, Counts 1 and 2 are **DISMISSED without prejudice**.

### C. RFRA

In Count 3, Pitts seeks money damages against all four Defendants in their individual capacities for imposing a substantial burden on his religious exercise by denying him access to a prayer schedule and religious materials. He also seeks injunctive

relief against Defendants in Count 4 under RFRA. The Religious Freedom Restoration Act of 1993 ("RFRA"), 42 U.S.C. § 2000bb *et seq.*, prohibits the Federal Government from imposing substantial burdens on the exercise of religion, absent a compelling interest pursued using the least restrictive means possible. *Tanzin v. Tanvir*, 141 S.Ct. 486, 489-91 (2020). A person whose religious exercise has been unlawfully burdened may seek "appropriate relief" under RFRA. *Id.* This relief includes injunctive relief, against high-ranking officials in their official capacity, and money damages, against individual defendants in their individual capacities. *Id.* at 491-93. Thus, Pitts's claims in Counts 3 and 4 shall proceed past screening.

### D. FTCA Claims

The Federal Tort Claims Act ("FTCA") allows civil actions for money damages against the United States for personal injury or death caused by the negligent or wrongful act or omission of any Government employee while acting within the scope of his or her office or employment.  *See* 28 U.S.C. § 1346(b)(1). The FTCA claim in this case arises from allegations of a civil conspiracy, negligence, and intentional infliction of emotional distress resulting from the refusal to provide Pitts with a prayer schedule and religious materials. Pitts raises theses counts under Illinois law.

Simply put, all three counts fail to state a claim. Pitts's allegations are merely conclusory and threadbare. For instance, in order to state a civil conspiracy claim in Count 5, Illinois law requires a plaintiff to demonstrate: "(1) an agreement between two or more persons for the purpose of accomplishing either an unlawful purpose or a lawful purpose by unlawful means; and (2) at least one tortious act by one of the co-conspirators

in furtherance of the agreement that caused an injury to the plaintiff." *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 509 (7th Cir. 2007) (citing *McClure v. Owens Corning Fiberglas Corp.*, 720 N.E.2d 242, 258 (Ill. 1999)). But Pitts merely states Defendants reached an agreement to deny Sunni Muslims access to their radio, watches, religious materials, and prayer schedules (Doc. 1-1, p. 7). He does not provide any further allegations.

In Count 6, Pitts seeks to raise a negligence claim, but to state such a claim a complaint must allege facts to establish that the defendant owed Pitts a duty of care, breached that duty, and the breach was the proximate cause of his injury. *Thompson v. Gordon*, 948 N.E.2d 39, 45 (Ill. 2011). Again, Pitts relies on threadbare allegations and conclusory statements.

Finally, in Count 7, to state an intentional infliction of emotional distress claim, Pitts must show that the BOP officials acted in an extreme and outrageous way, intended to inflict severe emotional distress or knew of the high probability that it would occur, and caused the plaintiff to suffer from severe emotional distress. *See Doe v. Calumet City*, 641 N.E.2d 498, 506-07 (Ill. 1994). Again, Pitts merely offers conclusory statements that Defendants intended to cause emotional distress and that, religion being his entire life, their failure to provide him religious materials caused him anxiety. Thus, Pitts's claims in Counts 5, 6, 7 under the FTCA fail to state a claim and are **DISMISSED without prejudice**.

**Pending Motions**

Pitts recently filed a motion for Court Order (Doc. 7), requesting that the Court Order his "jailers" at USP-Marion to not open any mail from the Court. He also requests an order that his outgoing mail labeled "Special Mail/Legal Mail" similarly be sealed and not opened by his "jailers." The Court **DENIES** his request. He does not identify any particular individual who is interfering with his mail, cites no examples, and does not indicate when or how often the interference has occurred.

**Disposition**

For the reasons stated above, Counts 3 and 4 will proceed for money damages and injunctive relief against C. Davis, Dan Sproul, J. Leclair, Harmon, Kathy Hill, S. Wallace and N. Simpkins, in their individual and official capacities, pursuant to the Religious Freedom Restoration Act. Counts 1, 2, 5, 6, and 7, as well as Defendants Barbara Von Blankensee, Mary Noland, Amber Nelson, B. Pattios, Katherine Siereveld, and Tracy Knutson are **DISMISSED without prejudice** for failure to state a claim upon which relief may be granted.

It is further **ORDERED** that in Counts 5, 6, and 7, the United States be **SUBSTITUTED** in place of the named Defendants. Counts 5, 6, and 7 are, subsequently, **DISMISSED without prejudice**.

The Clerk of Court is **DIRECTED** to complete, on Pitts's behalf, a summons and form USM-285 for service of process on Defendants C. Davis, Dan Sproul, J. Leclair, Harmon, Kathy Hill, S. Wallace and N. Simpkins; the Clerk shall issue the completed summons. The United States Marshal **SHALL** serve Defendants C. Davis, Dan Sproul, J.

Leclair, Harmon, Kathy Hill, S. Wallace and N. Simpkins pursuant to Federal Rule of Civil Procedure 4(e). All costs of service shall be advanced by the United States, and the Clerk shall provide all necessary materials and copies to the United States Marshals Service.

In addition, pursuant to Federal Rule of Civil Procedure 4(i), the Clerk shall (1) personally deliver to or send by registered or certified mail addressed to the civil-process clerk at the office of the United States Attorney for the Southern District of Illinois a copy of the summons, the Complaint (Doc. 1-1), and this Memorandum and Order; and (2) send by registered or certified mail to the Attorney General of the United States at Washington, D.C., a copy of the summons, the Complaint, and this Memorandum and Order.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order**.

If judgment is rendered against Pitts, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Pitts is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not

later than **seven days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  May 17, 2022**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**

### Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**